339 So.2d 861 (1976)
Julia McFARLAND
v.
CROWLEY INDUSTRIES, INC.,[1] et al.
No. 5589.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1976.
Rehearing Denied December 15, 1976.
Writ Refused February 18, 1977.
*862 Guillory, McGee & Mayeux, by John Fontenot, Eunice, for plaintiff-appellant.
Allen, Gooch & Bourgeois, by Kenneth W. Cole, Lafayette, for defendants-appellees.
Before MILLER, WATSON and PETERS, JJ.
WATSON, Judge.
This is a workmen's compensation suit in which the trial court granted benefits for total and permanent disability but declined to award penalties and attorney's fees. Plaintiff has appealed, contending that the termination of weekly payments on either of two occasions by the insurer entitles her to the penalties and fees of LSA-R.S. 22:658. Plaintiff is Julia McFarland. Defendants are her employer, Crowley Manufacturing Company, and its insurer, the Home Insurance Companies.

Motion to Dismiss
Defendants have moved to dismiss the appeal on the ground that a judgment had not been signed when the motion for appeal was granted.
The trial court handed down written reasons on the merits on March 12, 1976. On April 2, 1976, the plaintiff moved for and obtained an order for devolutive appeal in forma pauperis. A final judgment was not signed until April 13, 1976. When filed in this court on June 7, 1976, the signed judgment was contained in the record.
The defendants argue that plaintiff's appeal was premature and should be dismissed. The general rule is that the absence of a signed judgment from a transcript of appeal requires that the appeal be dismissed. Forman v. May, 201 So.2d 683 (La.App. 3 Cir. 1967). However, an appeal taken after rendition but before signing of a judgment will not be dismissed if the signed judgment is included in the record filed in the appellate court. Richards v. Gettys, 329 So.2d 475 (La.App. 4 Cir. 1976). The motion to dismiss the appeal is denied.

On the Merits
The accident occurred on January 3, 1974 when Mrs. McFarland was operating a mechanical iron which jammed, coming to an abrupt halt and injuring plaintiff's neck and right shoulder. Shortly after the accident, defendant began to pay weekly compensation benefits, which were continued until June 25, 1974, at which time the payments were stopped. Payments of weekly compensation benefits were resumed when a check was issued on August 22, 1974, for *863 the period from June 26, 1974, through August 20, 1974.
The present suit was filed August 29, 1974, improperly naming Crowley Industries, Inc. and Aetna Casualty and Surety Company as defendants. Plaintiff did not receive the check issued[2] on August 22, 1974, until the first week of September, 1974, and at that time realized she had named the wrong parties as defendants. Her petition was amended, prior to answer, on September 20, 1974, to properly name Crowley Manufacturing Company and The Home Insurance Companies as parties-defendant and the incorrect defendants were dismissed.
Defendants filed an exception of prematurity, alleging that benefits had been paid to plaintiff from the time of the accident, and were still being paid at the time suit was filed and at the time the petition was amended. The trial court dismissed the exception, holding that the issue of prematurity is determined at the time suit is instituted, and, at that time, there were benefits due and owing plaintiff.
Defendants again discontinued benefits on June 17, 1975, and no benefits were paid until trial on the merits in February, 1976. At trial, plaintiff was awarded benefits for total and permanent disability and medical expenses but was denied penalties and attorney's fees.
The issues presented on appeal are:
(1) was the exception of prematurity correctly dismissed?
(2) is plaintiff entitled to penalties and attorney's fees as a result of;
(a) the termination of weekly benefits on June 25, 1974;
(b) the termination of weekly benefits on June 17, 1975;
(c) the failure to pay medical expenses.
We will consider the exception of prematurity and the termination of June 25, 1974, together.
The record is devoid of any explanation as to why the insurer stopped payments on June 25, 1974. It is clear that the accident was reported as occurring on January 3, 1974; that the employer filed the standard "Employer's First Report of Injury" (P-6, TR. 82) with the insurer; and that the employer referred plaintiff to Dr. E. S. Fields, a physician of Crowley, who undertook treatment. Payment of weekly compensation benefits was begun timely and continued until, for some unexplained reason, the insurer stopped payments on June 25.
To the suit filed August 29, 1974 the employer and insurer asserted an exception of prematurity. Although the wrong employer and insurer were named, this deficiency was corrected by amendment. The amendment relates back to the original filing. LSA-C.C.P. art. 1153.
If the defendants rely on the rule that a payment mailed is considered delivered (Bertrand v. Patterson Truck Line, 138 So.2d 663 [La.App. 3 Cir. 1962]), then the burden is on them to demonstrate by appropriate evidence that the payment was mailed. There is no evidence at all in the record concerning the mailing or delivery of the check issued on August 22, 1974.
Thus, when suit was filed, a period of more than 60 days had elapsed since the unexplained termination of payments. It is not necessary, therefore, to consider whether plaintiff was required to wait 60 days before suing for benefits, penalties and attorney's fees. We do not consider the argument that the 60-day period was not required under the circumstances. See Gravis v. Maryland Casualty Company, 307 So.2d 663 (La.App. 3 Cir. 1975), writ refused 310 So.2d 854; and Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3 Cir. 1976).
*864 We hold, therefore, that the suit was not premature and that the unexplained termination of weekly benefits was arbitrary, capricious and without probable cause, entitling plaintiff to an additional judgment for penalties and attorney's fees.
The second issue is whether the discontinuance of weekly payments on June 17, 1975 was arbitrary, capricious and without probable cause.
Having determined that the first termination of compensation was violative of the penalty statute does not necessarily preclude the necessity for deciding the second issue because, if there was a genuine dispute as to the causal connection between the accident and the injury, then the insurer would have been entitled to discontinue benefits pending a judicial determination.
The jurisprudence recognizes that a good faith reliance on a physician's opinion that the accident did not cause the injury is adequate grounds for refusal to pay compensation. Norred v. Travelers Insurance Company, 236 So.2d 637 (La.App. 2 Cir. 1970); Starks v. Hardware Mutual Casualty Company, 231 So.2d 657 (La.App. 2 Cir. 1970).
In the instant appeal, the insurer had resumed payment of weekly compensation benefits and was paying at the time plaintiff's counsel deposed Dr. William Foster, a neurosurgeon of Lake Charles who had treated plaintiff. At the June 6, 1975 deposition, this doctor first testified that plaintiff's injury was consistent with the type of accident she had reported to him and that her history was compatible with the aggravation of a pre-existing condition. (TR. 91) On cross-examination, counsel for the insurer posed a hypothetical question to the doctor emphasizing the possible use of only her thumb and index finger and the doctor testified that, in his opinion, "jamming her thumb" could not cause the severe problem in her neck. (TR. 100) Finally, under further questioning by counsel for plaintiff, the doctor testified that assuming the use of her hand rather than just the thumb and index finger, and the jamming of the iron, such an accident would be consistent with her injury. (TR. 108).
On the basis of this deposition, the insurer again terminated compensation on June 17, 1975.
The termination of benefits on the basis of a physician's answer to a hypothetical question which is not supported clearly by the record is not justified. Plaintiff's testimony as well as the film in the record (D-1) indicate that the use of the iron involved the use of the entire hand and movement of the arm and shoulder. The record does not establish that plaintiff used only the thumb and index finger as assumed in the hypothetical question. The testimony of Dr. Charles A. Borne, the neurosurgeon who operated on plaintiff, whose deposition was taken on June 18, 1975, the day following termination of compensation benefits, as well as on January 6, 1976, when he saw the film; the film itself; and the testimony of Dr. E. S. Fields, the physician who first treated plaintiff, show no real dispute as to the causal connection between the accident and the injury.
Therefore, we conclude that the second termination of compensation was also arbitrary, capricious and without probable cause, entitling plaintiff to penalties and attorney's fees.
In view of our resolution of the other issues, it follows that plaintiff is correct in contending that the failure to pay medical expenses was arbitrary, capricious and without probable cause. The record indicates that the insurer failed to pay many of plaintiff's medical expenses. Bills (P-11 in globo) received in evidence reflect the following unpaid accounts at the time of trial:

 Ione's Drug Store $ 191.54
 Dr. Steven Snatic 40.00
 Lake Charles Neurological Clinic
 (Drs. Foster and Borne) 980.00
 Oak Park Clinical Laboratory 105.50

*865
 Lake Charles Memorial Hospital[3]
 (Admission of July 30, 1975) 534.36
 Acadian Ambulance 26.00
 Lake Charles Medical and Surgical
 Clinic (Dr. DeLaureal) 71.00
 Dr. George Schneider 110.00
 Physical Therapy Clinic 300.00
 Dr. Ray Hebert 9.00
 _________
 TOTAL:___________________ $2,367.40

Accordingly, plaintiff is entitled to judgment for 12% of the medical expenses which were unpaid at the time of trial.
Plaintiff is entitled to penalties in the amount of 12% on the payments received through the check issued on August 22, 1974 and on the payments received to bring compensation up to date after trial on the merits.
It is necessary to fix the fee of plaintiff's counsel and we consider, among other factors, the degree of skill exhibited and the volume of work performed in prosecution and collection of the claim. Williams v. Liberty Mutual Insurance Company, supra. In this case, the attorney was required to participate in a number of preliminary matters and the taking of four medical depositions. The trial itself was relatively brief, involving the testimony of only three witnesses. All factors considered, we think that a fee of $3,500, representing services both in the trial court and on appeal is fair and reasonable.
For the foregoing reasons, it is ordered, adjudged and decreed that there be additional judgment in favor of plaintiff, Julia McFarland, and against the defendant, Home Insurance Companies, in the amount of 12% penalties on the compensation due and payable from June 26, 1974 through August 20, 1974; in the amount of 12% on the compensation due and payable from June 17, 1975 until date of payment of past due compensation following trial; in the amount of 12% of unpaid medical expenses of $2,367.40; and for an attorney's fee of $3,500.
All costs are taxed against the defendant, Home Insurance Companies.
REVERSED IN PART AND RENDERED.
NOTES
[1] This company was named incorrectly as a defendant, (see infra) but following our usual policy we retain the suit caption used in the trial court.,
[2] The circumstances surrounding the issuance of this check are not reflected by the record; it is not established, for example, that it was mailed to plaintiff on August 22, 1974.
[3] The record contains other bills from Lake Charles Memorial Hospital but it is unclear as to what other amounts are past due.