420 So.2d 1220 (1982)
Sharon HARRIS, Plaintiff-Appellant,
v.
LOUISIANA-PACIFIC CORPORATION, Defendant-Appellee.
No. 82-44.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1982.
*1221 Sanders & Castete, Ltd., Martin S. Sanders, Jr., Winnfield, for plaintiff-appellant.
Gaharan & Wilson, Donald R. Wilson and Paul Boudreaux, Jr., Jena, for defendant-appellee.
Before CULPEPPER, GUIDRY and LABORDE, JJ.
LABORDE, Judge.
This is a workmen's compensation suit. Plaintiff, Sharon Harris, instituted this suit against her former employer, the Louisiana-Pacific Corporation. Plaintiff seeks to recover benefits for loss of a physical function. The trial court rendered judgment in favor of defendant. From this judgment, plaintiff has perfected this appeal. We affirm.
The issue presented on appeal is whether plaintiff's loss of a physical function, the ability to bear children, was caused by job related trauma.
The record reveals that plaintiff worked as a grader at defendant's plant in Urania, Louisiana. As a grader, plaintiff was to sort sheets of plywood as they were ejected from a plywood drying machine onto a flat table. During the evening shift on December 12, 1978, plaintiff was struck in the abdomen area by a sheet of plywood veneer ejected from the machine. The sheet of veneer weighed about twelve (12) pounds and was moving at a slow rate of speed. Plaintiff was taken to a hospital that night but was not treated by a physician. She exhibited no signs of internal disorder. Her clothes were not torn. She was not bruised, or lacerated, and she had no abrasions in the vicinity of the trauma.
On December 14, 1978, plaintiff saw Dr. E.C. Meyers. She complained of generalized abdominal pain and backache. She was admitted to the hospital for tests and was released on December 22, 1978. On January 9, 1979, plaintiff re-entered the hospital. On January 10, 1979, Dr. L.R. Collier examined plaintiff and found evidence of chronic pelvic inflammatory disease and recommended a pelvic laparotomy be performed. The laparotomy revealed plaintiff had bilateral tubo-ovarian abscesses due to chronic pelvic inflammatory disease with numerous adhesions being present. It was necessary to perform a complete hysterectomy.
From December 12, 1978 through April 8, 1979, defendant paid to plaintiff $1,921.14 in workmen's compensation benefits, plus an additional $8,190.11 in medical benefits. This suit was filed to obtain additional benefits for loss of a physical function.
In addition to these facts, the record also contains the testimony of plaintiff's treating physicians. Dr. E.C. Meyers was the first physician to treat plaintiff. After reviewing the pathology report, he concluded that the inflammation found by the diagnostic laboratory was not the type inflammation normally associated with trauma.
Dr. L.R. Collier, the surgeon who performed the hysterectomy, was in agreement with Dr. Meyers. Dr. Meyers testified that he did not think the trauma had anything to do with plaintiff's pelvic abscesses. It was pure conjecture that the trauma caused a flare up in her pre-existing condition. Normal sexual activity or even another pelvic examination could have caused the flare up of the disease.
*1222 Dr. Gordon S. Bowers, a specialist in the field of gynecology, was called in to review the medical records, reports, and findings of Dr. Meyers and Dr. Collier. Dr. Bowers concluded that this was a textbook picture of pelvic inflammatory disease. He stated that this disease is a long developing process. He did not feel that the trauma caused a flare up of the disease. Dr. Bowers felt the most probable cause of the flare up was an anemic condition suffered by plaintiff prior to her accident.
From the medical testimony produced, the trial court concluded that plaintiff had suffered pelvic inflammatory disease for a long time. Her condition pre-existed the work related accident. The medical testimony further convinced the trial court that it was more likely than not that plaintiff was already incapable of conception at the time she was injured. Therefore, the trial court held that plaintiff's loss of a physical function was not caused by job related trauma.
In compensation cases the plaintiff has the burden of showing that more probably than not an employment accident occurred and that it had a causal relation to the disability. The plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation. Prim v. City of Shreveport, 297 So.2d 421, (La.1974); Randle v. Commercial Union Ins. Co., 396 So.2d 1007, (La.App. 3rd Cir.1981).
The standard of review of factual determinations in workmen compensation cases is that of manifest error. Hall v. Houston General Ins. Co., 377 So.2d 561 (La.App. 3rd Cir.1979), writ denied 379 So.2d 10 (La.1980); Randle v. Commercial Union Ins. Co., supra. We will not disturb the lower court's findings of fact unless they are clearly wrong. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
After reviewing the entire record we find that the evidence clearly supports the decision of the trial court. It is clear that the trauma suffered by plaintiff was not the origin of her disease. At best it is purely conjectural or speculative whether trauma could even cause a flare up of the pre-existing disease. The evidence is convincing that more probably than not the trauma sustained by plaintiff caused no change in her ability to bear children.
For the above and foregoing reasons the decision of the trial court is affirmed and all costs are assessed to the plaintiff-appellant.
AFFIRMED.