441 So.2d 309 (1983)
Virgie DELCO, Plaintiff-Appellee,
v.
HERITAGE MANOR NURSING HOME, et al., Defendants-Appellants.
No. 83-248.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
Writ Denied January 6, 1984.
*311 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara, Abell, John F. Wilkes, III, Lafayette, for defendants-appellants.
Privat & Regan, Thomas K. Regan, Crowley, for plaintiff-appellee-appellant.
Before FORET, STOKER and YELVERTON, JJ.
STOKER, Judge.
This is a workmen's compensation suit. Plaintiff, Virgie Delco, instituted this action against her employer, Heritage Manor Nursing Home, and its workmen's compensation insurer, Ranger Insurance Company, seeking to recover compensation benefits, penalties and attorney's fees as a result of accidents occurring on September 14, 1981 and October 7,1981. On those dates, plaintiff was a nurse's aide employed by Heritage Manor Nursing Home (Heritage Manor) in Crowley, Louisiana. The trial court held that the defendants were liable to the plaintiff for workmen's compensation benefits, penalties and attorney's fees. From that adverse judgment, the defendants bring this appeal. The plaintiff answers the appeal seeking an increase in attorney's fees to cover the cost of defending this appeal. The parties have stipulated that on the dates in question Mrs. Delco was employed by Heritage Manor, and was attending to her regular duties in the course and scope of her employment. They have also stipulated to the amount of compensation as being $86.28 per week.
There are two issues on this appeal: (1) whether the trial court erred in finding that Mrs. Delco's injuries and her consequent disability were employment related, and (2) whether the trial judge erred in finding that Heritage Manor and its compensation insurer were arbitrary and capricious in their termination of workmen's compensation and medical benefits. We amend and affirm.

FACTS
In the initial accident on September 14, 1981, plaintiff injured her back while lifting a patient onto a bed. She was treated by Dr. Murray Brown, and after a period of approximately two weeks she returned to work performing only light duties. Approximately one week later, on October 7, 1981, Mrs. Delco re-injured herself when she had to assist in lifting an overweight patient who fell. Mrs. Delco contends that this activity re-injured her back and aggravated *312 a pre-existing gynecological problem, resulting in her total disability. She has not returned to work since this second accident.
After re-injuring herself on October 7, 1981, plaintiff returned to Dr. Murray Brown for further treatment. She complained of a back injury with radiating pain down her right thigh. Dr. Murray Brown kept Mrs. Delco out of work and continued to treat her until November 9, 1981, when he referred her to Dr. James McDaniel, an orthopedic specialist, for further evaluation and treatment because of lack of improvement in her condition.
On December 7, 1981, Dr. James McDaniel began treating Mrs. Delco for pain in her lower back and lower right leg. Because of minimal objective evidence of injury, she was treated conservatively with anti-inflammatory medication and an exercise program. Dr. McDaniel continued to see Mrs. Delco on a regular basis. Her condition did not improve, and on January 25, 1982, he recommended that she be admitted to the hospital for a myelogram. Mrs. Delco was admitted to Our Lady of Lourdes Hospital, in Lafayette, on February 8, 1982, and a myelogram was performed the next day. The myelogram was found to be within normal limits. At this point, Dr. McDaniel concluded that Mrs. Delco's symptoms were not based on an orthopedic problem. However, he suspected from the localization of her symptoms that her problems might have been either genitourinary or gynecological. Dr. McDaniel referred her to Dr. Kenneth Brown, a gynecologist. Having found no orthopedic problems, Dr. McDaniel formally discharged Mrs. Delco from his care on March 11, 1982.
Dr. Kenneth Brown, who became the treating physician at this time, performed a gynecological examination on Mrs. Delco while she was still in Our Lady of Lourdes Hospital for the myelogram. He diagnosed her condition as uterine descensus or prolapse and concluded that the back pain was caused by the uterine prolapse. (At this time, Dr. Kenneth Brown was not aware that Mrs. Delco's medical history revealed that she had been diagnosed as having had uterine decensus or prolapse in 1976 by a Dr. Hawes.) Dr. Kenneth Brown concluded that the condition had been asymptomatic until the accidents on September 14, 1981, and October 7, 1981. He felt that the heavy lifting involved in these accidents caused the condition to become symptomatic resulting in Mrs. Delco's pain and disability. In his opinion a hysterectomy was necessary to correct the problem. Dr. Kenneth Brown had Mrs. Delco admitted to Lafayette General Hospital for the hysterectomy. Lafayette General Hospital called Ms. Lege, the representative of the compensation insurer who was responsible for handling Mrs. Delco's claim, for verification of compensation coverage on February 12, 1982. Ms. Lege denied the coverage. The hysterectomy was not performed.
Mrs. Lege stated that she denied coverage on February 12, 1982, because she was not aware at that time that Mrs. Delco had been referred to Dr. Kenneth Brown and because she thought that Mrs. Delco's problem was solely orthopedic in nature. Sometime shortly after February 12, Ms. Lege learned that Mrs. Delco had been referred to Dr. Kenneth Brown by Dr. McDaniel, and in a letter sent to Dr. Brown dated February 18, 1982, she requested a report concerning Mrs. Delco's condition and how it might be related to her job injuries.
In his report, dated February 25, 1982, Dr. Brown indicated that Mrs. Delco's back pain was caused by uterine prolapse. In a clarification letter to Dr. Brown dated March 3, 1982, Ms. Lege specifically asked whether Mrs. Delco's uterine prolapse was related to her on-the-job back injury. In his reply dated March 16, 1982, Dr. Brown stated, "Yes, increase intra-abdominal pressure from lifting heavy objects will stimulate uterine prolapse and backache." Prior to receiving Dr. Brown's reply, Ms. Lege received a report dated March 11, 1982, from Dr. McDaniel informing Ms. Lege that he had formally discharged Mrs. Delco because he felt that her symptoms were not based on an orthopedic problem. During the latter part of March, 1982, Dr. Brown *313 again sought to admit Mrs. Delco for surgery. On March 23, 1982, Our Lady of Lourdes hospital contacted Ms. Lege to verify coverage for a hysterectomy and Ms. Lege denied coverage.
Ms. Lege terminated the workmen's compensation benefits at this time based on the fact that both Dr. Murray Brown and Dr. McDaniel had found no objective signs of orthopedic problems. All of Mrs. Delco's benefits, both compensation and medical, had been paid up until this time except for medical payments due Dr. Kenneth Brown.
In April, 1982, plaintiff filed this law suit. Shortly thereafter, the parties agreed to get a second opinion. On June 25, 1982, Mrs. Delco went to see Dr. Wallace Begneaud, Jr., a specialist in obstetrics and gynecology, for the purpose of getting a second opinion regarding the status of her gynecological system and more specifically to see whether or not he thought that the condition of her female organs materially affected her main complaint, which was a backache. Dr. Begneaud's opinions were issued in a report written on June 30, 1982. He reached three conclusions and diagnoses: (1) uterine descensus existed but it was not responsible for her complaints and was not severe enough to warrant surgery; (2) she had adenomyosis, a different gynecological problem which was partly responsible for her pain, and which could not be related to or caused by her work, and (3) she had myofascial syndrome (an orthopedic problem) which was partly responsible for her pain and which was definitely aggravated by her work and became symptomatic thereby. In his deposition, Dr. Begneaud testified that adenomyosis can be cured only by having a hysterectomy and the only way to accurately diagnose this condition would be through surgery. He stated that he would recommend a hysterectomy for this condition.

WAS MRS. DELCO'S DISABILITY CAUSED BY A JOB-RELATED INJURY?
In compensation cases the plaintiff has the burden of showing that more probably than not an employment accident occurred and that it had a causal relation to the disability. Harris v. Louisiana-Pacific Corp., 420 So.2d 1220 (La.App.3rd Cir.1982). A worker's pre-existing condition does not bar his recovery under workmen's compensation because the employer takes the worker as he finds him. Guillory v. U.S. Fidelity & Guaranty Ins. Co., 420 So.2d 119 (La.1982). An employee's disability is compensable if a work-related accident aggravates or accelerates a pre-existing condition to produce disability. Cadiere v. West Gibson Products, Co., Inc., 364 So.2d 998 (La. 1978).
The question of whether there is a causal relationship between the disability and the employment is a question of fact. Moreau v. Houston General Ins. Co., 386 So.2d 151 (La.App.3rd Cir.1980). A factual determination by the trial court should not be reversed unless the trial court was clearly wrong from an examination of the record as a whole. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
As a general rule, the treating physician's testimony should be given more weight than that of a doctor who examines a plaintiff for diagnosis only. Ellis v. Rapides Parish School Board, 419 So.2d 990 (La.App.3rd Cir.1982).
The facts indicate that Mrs. Delco was diagnosed as having had uterine descensus or prolapse in 1976. Neither Dr. Kenneth Brown nor Dr. Begneaud dispute the fact that Mrs. Delco was predisposed to developing this condition. They both testified that her six (6) pregnancies, her obesity, and gravity in concurrence with these two prior factors would predispose her to developing this condition.
Dr. Kenneth Brown, the treating physician, testified that although Mrs. Delco was predisposed to uterine descensus this condition was asymptomatic until the two accidents occurred. In his opinion these accidents were the most probable cause of the condition becoming symptomatic which in turn caused her pain and disability. He *314 testified that a hysterectomy was needed to correct the problem.
Dr. Begneaud, consulted for a second opinion, agreed that Mrs. Delco had uterine descensus but felt it was not responsible for her pain and did not warrant surgery. He did however, believe Mrs. Delco was sincere in her complaints of greatly increased pain after the accidents. He attributed this pain to two conditions, adenomyosis (a gynecological condition) and myofascial syndrome (an orthopedic problem). He concluded that the adenomyosis was not work related but did recommend a hysterectomy to cure it. He further concluded that the myofascial syndrome was definitely aggravated by her work and became symptomatic thereby.
Dr. McDaniel, the orthopedic specialist, found no orthopedic problem.
Based on the entire record, we cannot say that the trial court was clearly wrong in finding that Mrs. Delco's injury and her consequent disability were employment related.

IS PLAINTIFF ENTITLED TO STATUTORY PENALTIES AND ATTORNEY'S FEES?
If failure to pay workers' compensation benefits is found to be arbitrary, capricious or without probable cause, penalties and attorney's fees may be awarded. LSA-R.S. 22:658; Guillory v. U.S. Fidelity & Guar. Ins. Co., supra. If there is a genuine dispute as to the causal connection between the accident and the injury, the employer and the insurer are entitled to discontinue workmen's compensation benefits pending a judicial determination. McFarland v. Crowley Industries, Inc., 339 So.2d 861 (La.App.3rd Cir.1976).
The issue of whether the refusal to pay compensation benefits was arbitrary and capricious is a factual determination which must be determined upon the merits of each case. Moreau v. Houston General Ins. Co., supra. A factual determination by the trial court should not be reversed unless the trial court was clearly wrong from an examination of the record as a whole. Arceneaux v. Domingue, supra.
The trial judge gave judgment in favor of Mrs. Delco in pertinent part as follows:
"ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of VIRGIE DELCO and against HERITAGE MANOR NURSING HOME & RANGER INSURANCE COMPANY, jointly, severally and insolido in the full sum of EIGHTY-SIX 28/100 ($86.28) DOLLARS per week for compensation benefits beginning March 26, 1982, said past due benefits from March, 1982 until initial payment to be paid in a lump sum and weekly compensation benefits to continue thereafter during plaintiff's disability and that a penalty of 12% of the total compensation benefits be paid in a lump sum together with said benefits; it is further
"ORDERED, ADJUDGED AND DECREED that defendants be ordered to pay for all medical expenses necessary for the plaintiff including operations which may be necessary for the plaintiff to return to work and that a 12% penalty of the total amount of medical expensess incurred by the plaintiff be awarded as penalty in this matter; and it is further
"ORDERED, ADJUDGED AND DECREED that defendants be assessed with attorney fees in the amount of 20% of the entire award of the Court including all past due compensation benefits, medical expenses and penalties; and it is further
"ORDERED, ADJUDGED AND DECREED that defendants pay legal interest on all sums due from date until paid."
On its face this judgment may present some difficulties, one of which will be mentioned later in this opinion. For the moment we address only the substantive question of whether any penalties and statutory attorney's fees at all should have been awarded.
The workmen's compensation insurer, through Mrs. Lege, its representative who handled Mrs. Delco's claim, terminated the workmen's compensation benefits on or about March 23, 1983. Up until this time *315 all of Mrs. Delco's benefits, both compensation and medical, had been paid except for the medical benefits due Dr. Kenneth Brown. The reason given by Ms. Lege for terminating these benefits at this time was that both Dr. Murray Brown and Dr. McDaniel had found no objective signs of orthopedic problems.
By March 23, 1983, Ms. Lege was already aware that Dr. McDaniel had referred Mrs. Delco to Dr. Kenneth Brown because he suspected her back pains were gynecological in origin, that Dr. Kenneth Brown was now Mrs. Delco's treating physician, that Dr. Kenneth Brown had diagnosed Mrs. Delco's back pain as arising from a condition known as uterine prolapse or descensus which he specifically stated in a letter dated March 16, 1982, was aggravated or caused by the accidents of September 14, 1981 and October 7, 1981, and that in his opinion a hysterectomy was necessary to cure the problem. In no report did any doctor ever state to Ms. Lege that Mrs. Delco could return to work nor did any doctor state that the medical condition was clearly unrelated to the work of the plaintiff. Not until June 25, 1982, was a second opinion sought from Dr. Begneaud. As previously stated, the trial judge was not clearly wrong in giving more weight to Dr. Kenneth Brown's diagnosis. The record indicates that without a hysterectomy, Mrs. Delco could remain totally disabled.
Based on the entire record, we cannot say that the trial court was clearly wrong in finding that the compensation insurer was arbitrary and capricious in terminating both workmen's compensation and medical benefits. We affirm the casting of the statutory penalties against the compensation insurer. However, it was error to cast Heritage Manor as an insured employer for these penalties. Fontenot v. Town of Kinder, 377 So.2d 554 (La.App.3rd Cir.1979), writ denied, 379 So.2d 1102 (La.1980).

ATTORNEY'S FEES
In its judgment the trial court assessed defendant with penalty attorney's fees "in the amount of 20% of the entire award of the court including all past due compensation benefits, medical expenses and penalties..."
The amount awarded as attorney's fees rests largely on the discretion of the trial court. Each case must be decided in light of its own facts and circumstances, bearing in mind that the fee awarded must be reasonable. Melder v. Century Tel. Enterprises, 413 So.2d 1325 (La.App.3rd Cir. 1982). In determining the amount of attorney's fees to be awarded, the factors usually taken into account are the degree of skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the amount of time devoted to the case. Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981).
The trial judge's discretion in setting attorney's fees may be properly exercised without the necessity of evidence directly bearing on the amount of the fees since he may draw a reasonable inference from what took place before him of the time spent by the attorney and the value of the services rendered. Coulton v. Levitz Furniture Corp., 391 So.2d 80 (La.App.4th Cir.1980).
We noted above that the formal judgment in this case appears to be cast in somewhat unorthodox terms if not cast in actual error. One such item is the award of statutory, i.e. penalty, attorney fees under LSA-R.S. 22:658 "in the amount of 20% of the entire award of the Court including all past due compensation benefits, medical expenses and penalties ...". Statutory attorney's fees are customarily awarded in a specific amount. Plaintiff's brief contains some expression of complaint and dissatisfaction with the court's percentage award rather than fixing a specific amount. Plaintiff's counsel in plaintiff's brief asserts:
"Earlier cases have awarded the amount of $5000 for the trial and appeal of compensation cases. It is submitted that the Judge's award while totally appropriate is difficult to calculate and is based on factors which are not presently *316 available to the attorneys in this matter to calculate attorney fees and there is no necessity of awarding a percentage of the award of benefits and medical expenses."
Plaintiff answered the appeal but the answer is confined to a request for additional attorney's fees to cover the cost of services rendered on appeal. No answer to the appeal raises the question of the propriety or appropriateness of awarding statutory penalty attorney's fees on percentage basis.
In the brief filed on behalf of the defendants-appellants, no complaint is made relative to the form of the judgment and the only errors complained of are the two mentioned at the beginning of this opinion, namely, the question of plaintiff's entitlement to further compensation as basic proposition and whether (if plaintiff should prevail) defendants' action withholding compensation and medical expenses was arbitrary and capricious so as to entitle plaintiff to statutory penalties and attorney's fees. In defendants' petition for appeal, they do make complaint that the trial court's judgment was so awarded that it was impossible to ascertain the amount which should be placed in security in connection with the appeal, but appellants merely asked that the trial court relieve them of their dilemma by fixing the amount of the severity under the authority of LSA-R.S. 23:1351(B).
In summary neither the appeal nor answer to the appeal in this case have brought up on appeal any issues relative to the form of judgment of the trial court. No complaint in briefs is actually made relative to the wording of the judgment. Under the circumstances, we express no opinion relative to the provisions of the judgment itself other than to affirm the ruling that plaintiff should prevail on the basic issue of recovery of compensation and medical expenses and be awarded statutory penalties and attorney's fees.
As we have noted, the plaintiff answered the appeal seeking an increase in attorney's fees to cover the cost of defending this appeal. We award the plaintiff $500 for defending this appeal.

MEDICAL TESTIMONY, COURT COSTS AND LEGAL INTEREST
We also affirm the trial court's assessments against defendant for fees for medical testimony for each doctor in the amount of $250, all court costs, and for legal interest on all sums due from date until paid.
For the reasons assigned, the judgment appealed from is amended so as to increase the award for attorney's fees by an additional amount of $500. It is ordered, adjudged and decreed that at such time as this judgment shall become final, this $500 shall immediately become due and payable along with such other amounts as may be matured and payable at that time. The judgment is further amended to provide that the portion of the judgment awarding penalties and attorney's fees shall run solely against Ranger Insurance Company. In all other respects the judgment is affirmed. All costs of this appeal are assessed against defendants-appellants.
AFFIRMED AS AMENDED.