GUIDRY, Judge.
Plaintiff in this worker’s compensation suit appeals a judgment of the district court terminating her compensation benefits as of May 2, 1986. We affirm the judgment of the trial court.
Carrie Jean Moore was employed as a nurse’s aide by the Acadiana/St. Landry Guest Home. On or about April 24, 1982, Mrs. Moore suffered a soft tissue injury to her left ankle when she was attacked by a patient. A day or two after the accident, she sought treatment from Dr. Michael Williams who applied a short leg cast. Plaintiff returned to Dr. Williams on May 11, 1982, the cast was removed and, because of continued complaints of pain, Mrs. Moore was referred to Dr. John E. Cobb, an orthopedic surgeon in Lafayette.
Dr. Cobb first saw plaintiff in the mid 1970’s when he treated her for a fracture of the left ankle. This injury healed without incident. After completing his examination, Dr. Cobb was of the opinion that Mrs. Moore had suffered a strain of her left ankle ligaments and, opting for conservative treatment, he reapplied an ankle cast. Over the course of the next few months, Dr. Cobb was unable to resolve plaintiff’s complaints, even with several steroid injections. The doctor finally came to the conclusion that, because of her failure to improve and her continued complaints, Mrs. Moore must have developed a stenotic tendon sheath. On September 2, 1982, surgery was successfully performed to release the tendon sheath.
Dr. Cobb continued to follow plaintiffs post-operative progress and even though he was convinced the operation had been completely successful, Mrs. Moore continued to complain of pain and swelling in her left ankle and foot because of these continued complaints, Dr. Cobb was concerned that Mrs. Moore had developed sympathetic dystrophy and he referred her to Dr. Shannon Turney, a vascular surgeon, for evaluation. Dr. Turney’s examination and tests revealed no vascular problems but, because of plaintiff’s unrelenting lamentations, Dr. Cobb referred appellant to Dr. Norman Anseman for nerve conduction studies and an E.M.G. Both of these studies revealed no abnormal findings.
Dr. Cobb’s last regular visit with plaintiff was on January 31,1983. At that time, he felt that Mrs. Moore had a 10% to 15% permanent impairment to her foot but was *1156 of the opinion that she could resume her work as a nurse’s aide. In his deposition, Dr. Cobb opined that he felt a lot of plaintiffs complaints were the result of her not using her foot and voluntarily limiting its movement. He further stated that increased activity might reduce her articulated symptoms. We find it notable that, although Mrs. Moore continually complained of swelling of her ankle and/or foot, Dr. Cobb failed to observe any effusion after May of 1982.
In letters to defendant dated March 17 and May 11, 1983, Dr. Cobb stated that he saw no reason why plaintiff could not return to her job as a nurse’s aide. Subsequently, on July 13, 1983, defendant terminated worker’s compensation payments. Appellant had been receiving compensation benefits at the rate of $109.17 per week since April 24, 1982.
Following termination of worker’s compensation benefits, plaintiff sought the advice of counsel who referred her, in August 1983, to Dr. George P. Schneider. At that time, Dr. Schneider was of the opinion, based upon plaintiff’s symptoms and what he described as narrowing of the ankle joint space on x-ray, that she should be hospitalized to determine all the aspects of her problem and to determine what steps, if any, could be taken to alleviate her symptoms. Dr. Schneider felt that, at the time of his examination, Mrs. Moore was unable to carry out her duties as a nurse’s aide.
The present suit was instituted on November 17, 1983, and thereafter, in February 1984, Dr. Cobb again saw plaintiff, this time for reevaluation. Dr. Cobb’s findings were entered into evidence by deposition. In his deposition, Dr. Cobb testified that he felt plaintiff voluntarily restricted the mobility of her foot; that the circulation in the affected lower extremity appeared to be intact; and, plaintiff’s symptoms were “bizarre” in that they did not fit into any type of pattern and were not consistent with any one clinical entity. Dr. Cobb opined that Mrs. Moore was anatomically able to return to work; further surgery was not indicated; but, perhaps more tests should be done in an effort to determine if there was any treatable physical basis for appellant’s continued complaints of pain and swelling.
The trial court held a full hearing in the case on June 6, 1984. During the hearing, testimony was elicited showing that during the period she was receiving compensation, Mrs. Moore maintained a part-time sideline selling pies and was seen, in January 1984, participating in a “Western Ball”. Mrs. Landry, a former co-employee, testified that she observed Mrs. Moore wearing western boots and “jigging” during a costume contest. Additionally, it was stipulated by counsel that if Phil Backman, a private investigator, was called to testify, he would state, under oath, that he had conducted surveillance on plaintiff four times between April 7, 1983, and May 14, 1984, and on those occasions, plaintiff walked and drove a car without any apparent discomfort and the only time plaintiff limped or exhibited any sign of discomfort was upon entering and exiting the Acadia-na/St. Landry Guest Home when she went to pick up her worker’s compensation check.
No live medical testimony was presented at the hearing but letters and/or reports from Drs. Williams, Cobb, Schneider, and Morin were introduced. Dr. Norman Morin had conducted the most recent examination of plaintiff on May 14, 1984. Dr. Morin took numerous measurements and performed several tests. His conclusion, as stated in his deposition, was that plaintiff had a 10-15% disability to her ankle joint which should not prevent her from returning to work. When questioned during his deposition, Dr. Morin translated that disability to 5% of the leg.
The trial judge found that, as a result of the accident, Mrs. Moore did sustain a 10-15% impairment of “the left lower extremity”. He also found that defendant, Ranger Insurance Company, was not arbitrary or capricious in terminating benefits and in failing to pay plaintiff’s travel expenses, since the latter had not been presented to defendant for payment until the morning of the hearing. The court ordered the plaintiff’s travel expenses paid; appointed *1157 Dr. Cobb as the court’s expert to have performed on Mrs. Moore any tests he deemed appropriate at the expense of defendant; to report his findings back to the court? and, ordered reinstatement of plaintiffs worker’s compensation benefits during the period of testing.
On May 2, 1986, Dr. Cobb reported that extensive testing had failed to define the etiology of Mrs. Moore’s continued complaints. He advised that he did not feel surgery was indicated and stated that he had little to offer plaintiff “at this time”. Based upon this report, the trial judge rendered judgment terminating plaintiff’s compensation benefits as of the date of the letter, May 2, 1986. It is from this latter judgment that plaintiff appeals arguing that she remains temporarily totally disabled. Defendant-appellee, Ranger Insurance Company, argues that the judgment of the trial court should be affirmed in that plaintiff failed to prove that she is presently temporarily and totally disabled; and, the most plaintiff has proven is a 10-15% permanent partial disability to her left foot for which she has been over compensated.
In Boudreaux v. Southern Farm Bureau Casualty Insurance Company, 490 So.2d 813 (La.App. 3rd Cir.1986), a panel of this court recently restated some well established principles applicable in worker’s compensation cases:
“The worker has the burden of proving his disability to a legal certainty and by a preponderance of the evidence. Gibson v. Hayes Oilfield Const. Co., 467 So.2d 1304 (La.App. 3rd Cir.1985), writ denied, 472 So.2d 918 (La.1985). In every case the totality of the evidence, medical and lay, must be examined by the court in making its determination of whether to grant a disability award. Gibson, supra; Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977). Whether a worker’s pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Gibson, supra; Latiolais v. Home Ins. Co., 454 So.2d 902 (La.App. 3rd Cir.1984), writ denied, 460 So.2d 610 (La.1984)."
See also Fontenot v. G.L. Manuel Conoco, Company, 482 So.2d 1041 (La.App. 3rd Cir.1986); Dominick v. CNA Insurance Company, 497 So2d 758 (La.App. 3rd Cir.1986), writ denied, 501 So.2d 231 (La.1987); and Allor v. Belden Corporation, 393 So.2d 1233 (La.1981). It is also well established that the manifest error standard of appellate review applies to worker’s compensation cases. Wright v. Insurance Company of North America, 491 So.2d 161 (La.App. 3rd Cir.1986); Dominick v. CNA Insurance Company, supra; Boudreaux v. Southern Farm Bureau Casualty Insurance Company, supra; and, Harris v. Louisiana Pacific Corporation; 420 So.2d 1220 (La.App. 3rd Cir.1982).
Following the hearing of June 6, 1984, the trial judge found that plaintiff had a 10-15% impairment of the left lower extremity. It is evident, by his appointment of Dr. Cobb as the court’s expert, that the court was, at that time, unsure as to whether the plaintiff was still unable to return to work. The court took the conservative approach and ordered more testing and a continuation of compensation payments during such period. Both of those actions were within the discretion of the trial judge. Lewis v. Piccadilly, Inc., 489 So.2d 984 (La.App. 1st Cir.1986); Gary v. Dimmick Supply Company, 427 So.2d 33 (La.App. 3rd Cir.1983). As aforestated, following receipt of Dr. Cobb’s report, the trial court rendered judgment terminating plaintiff’s compensation benefits.
Our review of the record herein convinces us that in rendering his final judgment, the learned trial judge considered the totality of the evidence, including both lay and medical testimony. This body of evidence clearly supports the conclusions reached by the trial judge that plaintiff was able to return to work as of May 2,1986. Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.