491 So.2d 474 (1986)
Estella BERTRAND, Plaintiff-Appellants,
v.
ST. PAUL FIRE AND MARINE INS. CO., Defendants-Appellees.
No. 85-733.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
Rehearing Denied July 24, 1986.
Writs Denied October 3, 1986.
*475 Raleigh Newman, Lake Charles, Jones, Jones & Alexander, J.B. Jones, Jr., Cameron, for plaintiffs-appellants.
Pugh & Boudreaux, Charles J. Boudreaux, Sr., and Donlon Pugh, Lafayette, Plauche, Smith & Nieset, James R. Nieset, Lake Charles, Watson, Blanche, Wilson & Posner, Ambrose K. Ramsey, III, Baton Rouge, for defendants-appellees.
Before STOKER and YELVERTON, JJ., and BERTRAND, J. Pro Tem.[*]
YELVERTON, Judge.
These two consolidated medical malpractice cases present prescription questions. The first is whether an amending petition which for the first time expressed a malpractice demand and was filed after the prescription date, could relate back to a timely filed injunction proceeding between the same parties seeking preservation of the evidence, and thus save the claim from prescription. On the procedural facts of this case we find that the amendment related back, and that the exception of prescription should have been overruled. The second question is whether the claim against a separate defendant who was allegedly a solidary obligor but who was not named in the original pleading, entering the case for the first time by the amendment, was likewise exempted from prescription. We hold that as to this defendant there was nothing for the amendment to relate back to, and the trial court properly held the claim against him was prescribed. We reverse in part and affirm in part, for the following reasons, and we today render a separate judgment in the other consolidated case, Estella Bertrand v. St. Paul Fire & Marine Ins. Co., 491 So.2d 482 (La.App. 3rd Cir.1986).
Ronald Paul Bertrand died in the Jennings-American Legion Hospital on March *476 22, 1981. A month later, on April 24, 1981, his wife and children filed a petition in the district court against the Jennings-American Legion Hospital, Dr. Chris Schumacher, and St. Paul Fire and Marine Insurance Company, to prohibit them from altering or destroying the evidence surrounding Bertrand's death. The petition briefly recited the facts, stating that Bertrand had sought admission to the hospital on March 21 complaining of symptoms consistent with an attack of appendicitis, was denied admission, sought admission again the next day with the same symptoms, was admitted, and died that afternoon of a ruptured appendix. The plaintiffs alleged also that the reason they wanted an injunction was so they would have the evidence to support a petition they intended to file pursuant to LSA-R.S. 40:1299.41, et seq., the Louisiana Medical Malpractice Act.
A temporary restraining order was signed the same day this pleading was filed. It enjoined defendants from altering or destroying the evidence pertaining to the deceased's hospitalization. A date was also set for a temporary injunction rule but there is no minute entry of a hearing; apparently it went unheard. No responsive pleadings were ever filed to the injunction pleading.
The injunction suit was inactive until June 9, 1982. On that date, nearly 15 months after Bertrand's death, the plaintiffs amended the injunction pleading by specifically alleging malpractice and praying for damages against the three originally named defendants. On that same date request was made for a Medical Review Panel.
Dr. Richard McGregor, the fourth defendant, entered the case for the first time on January 7, 1983, when he was added by means of a second amending petition. Dr. McGregor was alleged to be liable in solido with the other defendants.
The above pleadings are what plaintiffs filed in the suit which is our Docket No. 85-733.
After the Medical Review Panel completed and filed its report, another suit, naming all four defendants, was filed on April 12, 1984. This is the pleading which appears in the suit that is our Docket No. 85-732.
One year later, in 1985, all defendants filed exceptions of prescription, all exceptions were maintained by the trial judge, and both suits were ordered dismissed. This appeal followed.
We will first discuss prescription as it pertains to the claims against Jennings-American Legion Hospital, Dr. Chris Schumacher, and St. Paul Fire and Marine Insurance Company. Later, we will discuss the issue as it pertains to the fourth defendant, Dr. Richard McGregor.
The trial court's reasons for judgment include the following observations:
"The Court has anguished over the issue and although LSA-R.S. 9:5801 is to be liberally construed and the essence of interruption of prescription is notice, the Court cannot escape the inevitable conclusion that the initial suit was nothing more than a suit seeking injunctive relief and did not put Defendants on legal notice that Plaintiff was making a claim for damages for medical malpractice in these pleadings. This suit in law did nothing more than a demand letter would which may also put the Defendants on notice that Plaintiff was making a claim for medical malpractice. Defendants certainly had notice that Plaintiff was making a claim, but in order to interrupt the running of the one (1) year prescriptive period Plaintiff had to either file suit making a claim, or submit a claim to the Insurance Commissioner. A suit for injunctive relief only is not a timely filed suit which can later be amended. Therefore, the amended pleadings wherein a claim is made for the first time not having been filed within the year came too late. These amendments which set forth a new or different cause of action cannot relate back to the original petition under CCP 1153."
Actions for damages for medical malpractice prescribe in one year. R.S. 9:5628. The filing of a civil action in a court of *477 competent jurisdiction and in the proper venue interrupts prescription affecting that cause of action. Former La.R.S. 9:5801. A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction. La.C.C.P. art. 421. A suit for an injunction is not an action for damages for medical malpractice. We agree with the trial court that this pleading did not interrupt prescription.
The question before us is whether the amendment related back under La.C. C.P. art. 1153 and saved the claim from prescription. The briefs of all the appellees, as well as the opinion of the district judge, take the position that for the amending petition of June 9, 1982, to relate back to the pleading filed on April 24, 1981, the original pleading would have had to state, or attempt to state, a medical malpractice claim. The argument begs the question. If the original pleading had been a medical malpractice suit, even one inartfully drawn, it would have interrupted prescription and this case would not be before us. It is because the pleading was not a malpractice claim, and did not interrupt prescription, that the question of relation back is now presented.
The relation back article, La.C.C.P. art. 1153, reads:
"Art. 1153. Amendment relates back
"When the action ... asserted in the amended petition ... arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."
The issue of whether the injunction suit could be amended cannot be confused with the issue of whether the amendment related back. It cannot be disputed that the injunction suit could be, and was, amended. Many judicial demands are coupled with an injunction proceeding, one can be filed without the other, and either one can be amended to include the other. Although there had been no activity in the injunction suit for several months, it was still pending when it was amended. Cf. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La. 1986). There was a pending pleading and it was properly amended (even with leave of court, though leave was not required). The question is simply, did it relate back?
The trial judge was concerned also that if an injunction could interrupt prescription, simply because it announced an intention to file a malpractice claim, a demand letter could too. It is true that a demand letter cannot interrupt prescription, but neither did the injunction suit. The difference is, an injunction suit can be amended, a demand letter cannot. An injunction suit, though not a malpractice claim, is nevertheless a suit, or pleading.
The real issue in this case is not whether the suit was amended, but whether the claim asserted in the amendment related back to the date the original suit was filed, thereby saving the malpractice claim from prescription.
A reliance upon the importance of notice rather than procedural technicalities has enabled Louisiana courts to give Article 1153 a liberal interpretation. Allstate Insurance Company v. Louisiana Gas Service Co., 344 So.2d 386 (La.App. 4th Cir. 1977), affirmed, 354 So.2d 503 (La.1978). As noted in Giroir v. South Louisiana Medical Center, 475 So.2d 1040 (La.1985), because our Article 1153 is based on Federal Rule of Civil Procedure 15(c), its doctrinal commentaries and judicial interpretation are strongly persuasive as to the meaning and application of the Louisiana article, citing Tate, Amendment of Pleadings in Louisiana, 43 Tul L.Rev. 211 (1969). In that article Judge Tate said:
"Like its federal counterpart, the article is designed to permit amendment despite a technical prescriptive bar to the matters alleged by the amendmentprovided that the original pleading gives fair notice of the general fact situation out of which the amended claim or defense arises. The article deliberately adopts no test of identity of cause or legal theory between the original and amending petitions; *478 the amendment's thrust need only be based upon or factually relate to (`arise out of') the `conduct, transaction, or occurrence' originally alleged. If the original timely pleading gives actual notice to a party that a formal claim or defense is being made based upon a particular factual situation, no essential protective purpose of a prescriptive statute is violated by permitting relation back of a postprescription amendment based on the same factual situation. Through the original pleading the opponent knows that judicial relief is sought arising from the general factual situation alleged, and he is put on notice that his evidence concerning it should be collected or preserved. The fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period." (Footnotes omitted.)
The corresponding language of Rule 15(c) is virtually identical to our Article 1153. It reads:
"Whenever the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."
The search under Rule 15(c) is for a common core of operative facts in the two pleadings. Clipper Exxpress v. Rocky Mountain Motor Tariff, 690 F.2d 1240 (9th Cir., 1982); Wright & Miller, 6 Federal Practice and Procedure, § 1497 (1971). An amendment that states an entirely new claim for relief will relate back as long as it satisfies the test embodied in the first sentence of Rule 15(c). Wright & Miller, 6 Federal Practice and Procedure, § 1497 (1971). The rule covers amendments alleging an additional cause of action. Santana v. Holiday Inns, Inc., 686 F.2d 736 (9th Cir., 1982).
A liberal interpretation of our Article 1153 is also encouraged by two familiar rules of construction found in our law. The first is La.C.C.P. art. 5051, which says that the articles of the Code of Civil Procedure are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves. The second is, correlatively, "prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished by it." Odessa House v. Goss, 453 So.2d 299 (La.App. 3rd Cir.1984).
Our jurisprudence on the subject reflects the application of these liberal rules. In Giroir, supra, the question presented was whether an amended petition, adding children as new plaintiffs in wrongful death and survival actions based on the death of their mother after prescription had run, related back to the filing of their father's timely original petition. The court held that it did, saying that under the circumstances of that case no essential protective purpose of the prescriptive statute was violated by permitting relation back of the post-prescription amendment based on the same factual situation pleaded in the original timely petition. It explained:
"Through the original pleading the defendants knew that judicial relief was sought arising from the general factual situation alleged, and they were put on notice that their evidence concerning it should be collected and preserved. The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period. Allstate Ins. Co. v. *479 Theriot, 376 So.2d 950, 954 (La.1979), rehearing denied 1979; Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973); Tate, Amendment of Pleadings in Louisiana, 43 Tul.L.Rev. 211, 233 (1969); F. James, Civil Procedure § 5.9 (1965); Comment, Developments in the Law: Statutes of Limitations, 63 Harv.L.Rev. 1177, 1185 (1950)."
Amendments have been allowed to relate back under Article 1153 to add new plaintiffs, add new defendants, state a different cause of action, and change the relief prayed for. In Giroir, plaintiffs were added by an amendment after prescription had run. In Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983), a defendant was added by an amendment. In another situation, where the amendment was between the same parties but stated a different cause of action from the one asserted in the original pleading, it was held that Article 1153 permitted the amendment despite prescriptive bars because the original pleading gave fair notice of the general fact situation from which the amended claim arose. Gunter v. Plauche, 439 So.2d 437 (La. 1983). Similarly, in Warriner v. Russo, 376 So.2d 571 (La.App. 4th Cir.1979), writ denied 380 So.2d 71 (La.1980), the parties were the same, and the relief prayed for was the same, but the cause of action was different. An amendment was allowed to relate back and defeat prescription. A change in the relief prayed for was allowed to relate back in Allstate Insurance Company v. Louisiana Gas Service Company, 344 So.2d 386 (La.App. 4th Cir.1977), affirmed 354 So.2d 503 (La.1978).
The trial court believed that the amendment could not relate back because it stated a separate cause of action. There are cases which so hold. One of them, Chenier v. Vanguard Party Sales, Inc., 430 So.2d 367 (La.App. 3rd Cir.1983), Judge Guidry dissenting, is from our circuit. The Fourth Circuit has disagreed with Chenier on identical facts. Miller v. New Orleans Home and Rehab. Center, 449 So.2d 133 (La.App. 4th Cir.1984). Perhaps this conflict has been settled by Gunter v. Plauche, supra, a later Supreme Court decision which declared that it is not necessary for the amendment to state the same cause of action as the pleading which it amends, in order for it to relate back and defeat prescription. Be that as it may, we do not believe that the two pleadings in the present case are founded on separate causes of action. The cause of action asserted in the two pleadings was the same; i.e., the wrongful acts of the defendants resulting in the death of plaintiffs' deceased. Although in the original pleading there was no allegation of wrongdoing, fault, or negligence, the inference was clear enough for notice purposes. Defendants were told that they could expect proceedings under the Medical Malpractice Act. No other construction could be given the pleading than that it was asserting, or at least attempting to assert, facts constituting wrongdoing. That the original pleading asked for an injunction and the amendment asked for damages does not mean that a different cause of action was stated. It means only that the demands of the suits were different. The demand of a suit is not synonymous with the cause of action therein. The demand is the object of the suit. The cause of action is the statement of facts which gives a party a right to judicially assert an action against the defendants. Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350 (La. 1975); National Surety Corp. v. Standard Accident Ins. Co., 247 La. 905, 175 So.2d 263 (1965).
We do not perceive it to be essential for the application of Article 1153 that the demands of the two pleadings be the same. The article does not say so. The only requirement of connexity is that the action in the amended petition arise out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." As we have seen from the above citations, identity of the demand is not required in the federal courts, nor has it been required in this state.
The essential determination to be made here is whether the original pleading, though deficient as a medical malpractice *480 demand, was nevertheless sufficient to meet the notice and other requirements of Article 1153, with the result that an amendment after prescription had run, curing the deficiencies, saved the claim from prescription. We can perceive no reason why not. The factual basis of the medical malpractice claim was the same conduct, transaction or occurrence that supported the claim for an injunction. The allegations of the injunction suit, although barebone, did more than provide notice to the defendants that they might be required to defend a suit based on malpractice, the pleading literally promised that the defendants would be required to defend a malpractice suit, and sought a judicial intervention to require them to collect and preserve their evidence. The original pleading put defendants on notice of the basic facts of the claim, and put them on notice that some form of judicial relief was being sought arising from their participation in the events surrounding Bertrand's death. The core of operative facts in the two pleadings was identical. The petition named Jennings-American Legion Hospital and Dr. Chris Schumacher as defendants, along with St. Paul Fire & Marine Insurance Company, a medical malpractice insurer. It stated that Bertrand went to the emergency room of the hospital on March 21, 1981, complaining of symptoms consistent with an attack of appendicitis, but that he was not admitted and was sent home the same date. The petition went on to state that Bertrand was finally admitted the next day, but that he died on the same day of admission as the result of a ruptured appendix. The pleading was brought by Estella Bertrand in her individual capacity and also as succession representative of the deceased and as natural tutrix of their minor children. It declared in two places that petitioner was aware of and intended to file a petition with the proper authorities pursuant to R.S. 40:1299.41, et seq. The law cited is the Medical Malpractice Act. The petition asked for an injunction prohibiting the defendants from altering or destroying evidence. We believe that this pleading gave the defendants notice that liability arising out of the factual occurrence pleaded was sought to be enforced against them. The pleading put the defendants on notice that some form of judicial relief was being sought arising from their participation in the events surrounding Bertrand's death, and put them on notice that their evidence concerning it should be collected and preserved. There is no question that defendants were aware of the original pleading. They were not prejudiced, as their active participation in the case testifies: discovery went on apace with the pleadings, and exceptions of prescription were not filed until four years after the original pleading, and three years after the amendment. No essential protective purpose of the prescriptive statute is violated in this case by permitting relation back of the post-prescription amendment based on the same factual situation pleaded in the original timely petition. We conclude for these reasons that the amending petition related back as to these three defendants and saved the claim from prescription.
We turn now to a consideration of the case against Dr. McGregor. It will be remembered that this doctor was not one of the defendants named in the original injunction pleading. He first entered the case by a second amending petition in 1983. In order to decide this aspect of the case, we focus on the fact that the juridical act which caused the defeat of prescription as to the other three defendants was not the suit filed before the prescription period ran, but the amendment filed afterward.
We are holding today that the malpractice claims against the other three defendants would have been prescribed at the latest on April 24, 1982 (one year from the date the plaintiff filed the injunction suit, amounting to a judicial admission of knowledge of the malpractice), but for the fact that the claim was exempted from the prescriptive bar by the relation back provision of C.C.P. art. 1153. The relating back article cannot apply to Dr. McGregor, however, because he was not named in the original suit. As to him, there was no pleading filed putting him on notice that some form *481 of judicial relief was being sought arising from his participation in the events surrounding Bertrand's death, and putting him on notice that his evidence concerning it should be collected and preserved. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986). There was no notification to him of a formal claim during the prescriptive period. By the time this notification occurred by means of a second amending petition filed January 7, 1983, prescription against Dr. McGregor had long since run. Since the relating back article has no application to him, the act which saved plaintiff's claim from prescription as to the three other defendants, did not save the claim from prescription as to Dr. McGregor.
Plaintiff argues, however, that since Dr. McGregor was alleged to be a solidary obligor with the other defendants, the suit against the others interrupted prescription with regard to him. This is a formidable argument, but we reject it. Perhaps that argument would avail plaintiff under the revised La.C.C. art. 1799, as enacted in 1984, because now the interruption of prescription against one solidary obligor is effective against all solidary obligors, regardless of whether the interruptive act is a suit or something else. However, under Article 1799's former counterpart, C.C. art. 2097, which was in effect when the instant proceedings occurred, only a suit brought against one solidary obligor interrupted prescription as to all. There was no medical malpractice suit brought against any defendant before prescription accrued in the present case, however, and therefore it cannot be said that it was a suit brought against the three solidary obligors that interrupted prescription as to Dr. McGregor. This is what distinguishes the present case from Hebert, supra, because there a timely suit against the other solidary obligors interrupted prescription. In our case, what exempts the claims against the other three defendants from prescription is not an interruption but the effect of the relation back amendment under C.C.P. art. 1153. Although the effect is the same as an interruption as to the other defendants, we have seen why relation back cannot affect Dr. McGregor, because the interests intended to be protected by the prescription statute in this case, as to him, far outweigh the interests to be protected by a law designed to permit an amendment despite a technical prescriptive bar to the matters alleged in the amendment. It has not always been the case that an action ruled timely as to one solidary obligor had the effect of interrupting prescription accrued as to another solidary obligor. See Ferguson v. Lankford, 374 So.2d 1205 (La.1979); Juneau v. Hartford Insurance Company, 458 So.2d 1011 (La.App. 3rd Cir.1984), writ denied 462 So.2d 198 (La.1984); and Duncan v. City of Pineville, 192 So.2d 664 (La.App. 3rd Cir.1966). We hold that the trial judge was correct in maintaining the exception of prescription as to Dr. McGregor.
For these reasons, the judgment of the trial court dismissing the claims against Jennings-American Legion Hospital, Dr. Chris Schumacher, and St. Paul Fire & Marine Insurance Company is reversed, and the case is remanded to the district court for further proceedings. The judgment dismissing Dr. Richard McGregor is affirmed. Jennings-American Legion Hospital, Dr. Chris Schumacher, and St. Paul Fire & Marine Insurance Company will pay the costs of this appeal.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I concur in the result reached by the majority holding in this case. In Chenier v. Vanguard Party Sales, Inc., 430 So.2d 367 (La.App. 3rd Cir.1983), I joined in an opinion holding to a contrary view. In its opinion here the majority notes that conflicting views exist on the question at issue, and the majority states that Gunter v. Plauche, 439 So.2d 437 (La.1983) has perhaps settled the issue. Upon reconsideration of the question in light of the Supreme Court's expressions in Gunter, I think the *482 Supreme Court has settled the question. It appears to me that Gunter abandons fact pleading as required by LSA-C.C.P. art. 891 in favor of notice pleading. This is so, at least where LSA-C.C.P. art. 1153 is brought into play through amendment of an original pleading and the principle of relation back.
Under Gunter, if the original pleading sets forth facts that identify the "conduct, transaction or occurrence," later amendment of that pleading may assert any demand based on that conduct, transaction or occurrence. There need only be "some factual connexity between the original and amended assertions...." Gunter v. Plauche, 439 So.2d at 440.
The majority discussion of the present cases of Estella Bertrand, which we save from prescription, illustrates just how strained that connexity can be. The fair notice to be found in an original petition need only give a bare bones notice. LSA-C.C.P. art. 1153 provides:
"Art. 1153. Amendment relates back
"When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."
If the original pleading is brought against the same parties listed in the amendment, then just about any demand or cause of action may be engrafted on that original pleading.
Under this reasoning I agree that Dr. Richard McGregor was properly dismissed from both suits.
NOTES
[*] Judge Lucien Bertrand, of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.