640 So.2d 494 (1994)
Edward L. BAKER, Plaintiff-Appellee,
v.
CONAGRA BROILER COMPANY, Defendant-Appellant.
No. 93-1230.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
Writ Denied September 23, 1994.
*495 William B. King, Shreveport, for Edward L. Baker.
Daniel T. Murchison, Natchitoches, for Conagra Broiler Co.
Before YELVERTON and THIBODEAUX, JJ., and CULPEPPER,[*] J. Pro Tem.
THIBODEAUX, Judge.
Conagra Broiler Company, the employer in this workers' compensation case, appeals an adverse judgment which denied its peremptory exception of prescription and granted Edward L. Baker, the employee, a scheduled loss payment for loss of an eye.
For the following reasons, we affirm.

FACTS
On February 23, 1990, Baker walked into the office at Conagra and, after noticing an employee using the telephone against company policy, attempted to notify the supervisor. His enforcement effort was thwarted when the employee struck him twice in the facial area near his left eye.
Baker reported the incident to the personnel director and the attending nurse on duty on that same day. He was told to place an ice pack on his eye and, later that day, was sent to the Wheat Eye Clinic. At the clinic, he was seen by Dr. Margaret Taylor Wheat, an ophthalmologist. Her examination revealed vitreous and subretinal hemorrhaging in his left eye as well as diabetic retinopathy, which is a disease of the blood vessels in the eye due to diabetes. Baker informed Dr. Wheat that he had been diabetic for nine years and had had laser surgery on his left eye in 1989 and in January, 1990 due to problems associated with his diabetic condition. Dr. Wheat testified in her deposition that the purpose of the surgeries was to weld the blood vessels so that they would not bleed.
Baker's vision in his left eye deteriorated to the point where he was only able to see a hand moving in front of him in April, 1990. Dr. Wheat referred him to the V.A. Hospital in Shreveport to see a retinal specialist. Dr. Charles E. Lyon, a retinovitreo specialist, was the doctor who eventually saw Baker concerning the problems with his left eye.
Dr. Wheat also continued to see Baker until June 4, 1992.
Dr. Lyon first documented seeing Baker on May 15, 1990. His examination on that date revealed that Baker had a visual acuity of 20/20 in the right eye and hand motion visual acuity in the left eye. Further, the examination revealed that he had a dense vitreous hemorrhage in the left eye with an underlying traction retinal detachment.
Baker gave Dr. Lyon a history of trauma to his left eye when he related to the doctor the incident occurring on February 23, 1990, as well as his prior surgical treatment.
During treatment for his left eye, Baker was out on disability and received full pay.
*496 On February 27, 1991, Baker filed form 1008 and a claim data form with the Office of Workers' Compensation (OWC), claiming that his employer's workers' compensation insurer was not paying some of his medical bills associated with the injury to his left eye. These forms were filed timely.
On May 2, 1991, he developed a painful left eye and acute glaucoma. From that point on, the left eye was non-functional. On June 24, 1992, Baker's left eye was removed. On November 17, 1992, Baker filed an amended petition requesting compensation benefits pursuant to a scheduled loss due to the loss of his left eye. The amended petition was filed more than two years after the injury.
Conagra claims that any claims for a scheduled loss of an eye had prescribed since the original claim form Baker filed only requested medical bill payment and more than two years had elapsed since the date of the accident. It additionally argues that the injury was not suffered during the course and scope of Baker's employment with Conagra. We disagree.

LAW AND DISCUSSION

A. Prescription
Conagra contends that Baker's claim for a scheduled loss is prescribed pursuant to the workers' compensation laws governing the time for filing suits. Baker, on the other hand, contends that his claim for a scheduled loss due to the removal of his left eye did not arise until June 24, 1992. Therefore, the amended petition filed November 17, 1992, within one year of the eye's removal requesting scheduled loss payments, was timely. Alternatively, Baker claims that his amended petition, pursuant to La.Code Civ.P. art. 1153, relates back to his timely filing of form 1008 and the claims data form even though the amended petition may be outside of the prescriptive period.
The prescriptive periods applicable to Baker's claim for scheduled loss payments are found in La.R.S. 23:1209. This section provides that claims are barred unless filed (1) within one year from the date of the accident; (2) one year from the last compensation payment for total disability or three years from last payment for partial disability; or (3) one year from the time the injury develops, if not immediately manifest, but no more than two years after the accident. We shall refer to the third period as the period for bringing an action for "developing disability."
After the accident occurred February 23, 1990, some of Baker's medical expenses were paid and, for a number of days while he was not working, he received full wages under Conagra's disability policy. Baker filed an amended petition for scheduled loss payments due to the loss of his left eye on November 17, 1992, more than two years after the accident. Thus, the suit was prescribed on its face. Because that suit was prescribed on its face, Baker had the burden of showing that prescription was interrupted in some manner. Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991).
Conagra argues that medical payments do not interrupt prescription and cites several cases to support that argument. However, in the cases cited by Conagra, medical payments were made without the claimant filing suit to obtain those payments. For various reasons those payments stopped. When suit was later filed, two years after the accident for payment of medical expenses and/or disability benefits, the claimants attempted to argue that their untimely filed original petition was interrupted by medical expense payments. The courts held that payments did not interrupt prescription. Bouillion v. Sam Broussard Trucking Co., Inc., 525 So.2d 628 (La.App. 3d Cir.1988); Comeaux v. Delcambre Seafood Market, 346 So.2d 1277 (La.App. 3d Cir.), writ refused, 349 So.2d 1270 (1977). In the case sub judice, Baker is not arguing that the medical payments interrupted prescription but that prescription was interrupted by his timely filed form 1008 and the claims data form. Because his amended petition relates back to the original filing of those forms, the cases cited above are not dispositive of the issue in this case. We agree with Baker.
The relation back issue in this case is governed by La.Code Civ.P. art. 1153 which provides:
*497 When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing of the original pleading.
It is well established that article 1153 permits amendment despite technical prescriptive bars where the original pleading gives fair notice of the original fact situation out of which the amended claim arises. Gunter v. Plauche, 439 So.2d 437 (La.1983); Rogers v. Louisiana Oil & Tire Co., 608 So.2d 263 (La.App. 3d Cir.1992). Amendments have been allowed to relate back under article 1153 to add new plaintiffs, add new defendants, state a different cause of action, and change the relief prayed for. Rogers, supra.
Prescriptive statutes are to be construed in favor of maintaining rather than barring actions. Taylor v. Liberty Mutual Ins. Co., 579 So.2d 443 (La.1991). Consistent with that precept, La.Code Civ.P. art. 1153 should be applied liberally and without undue restriction by technical rules. Bertrand v. St. Paul Fire & Marine Ins., Co., 491 So.2d 474 (La.App. 3d Cir.), writ denied, 494 So.2d 541, 543 (1986); Montminy v. Jobe, 600 So.2d 121 (La.App. 2d Cir.), writ denied, 604 So.2d 1003 (1992). This is especially true in workers' compensation cases.
The Louisiana Supreme Court provided an explanation of how this article and prescription interact in Giroir v. South La. Medical Ctr., Etc., 475 So.2d 1040 (La.1985). The court stated at page 1045:
The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of nonpreservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period. (Citations omitted).
If the original timely pleading gives actual notice to a party that a formal claim is being made based on a particular factual situation, no essential purpose of a prescriptive statute is violated by permitting relation back of a post-prescriptive amendment based on the same factual situation. Through the original pleading, the opponent knows that judicial relief is sought from the general factual situation alleged and it is put on notice that its evidence concerning that factual situation should be collected and preserved. Baker v. Payne and Keller of La., Inc., 390 So.2d 1272 (La.1980); Burner v. Malmac Energy Corp., 592 So.2d 1370 (La. App. 2d Cir.1992).
The Louisiana Supreme Court in Gunter, supra, held that La.Code Civ.P. art. 1153 requires only that the amending petition's thrust factually relate to the conduct, transaction or occurrence originally alleged. In Giroir, the court held that an amended petition which added children as new plaintiffs in a wrongful death action filed after prescription had run, related back to the filing of the original petition.
Although Giroir can be distinguished from the present case, the trend of our jurisprudence is to allow an amending petition to interrupt prescription where it factually relates to the conduct, transaction or occurrence originally "noticed" to defendant in the initial pleadings. Gunter, supra.
In Esteve v. Iberia Parish Hospital, 520 So.2d 848 (La.App. 3d Cir.), writ denied, 522 So.2d 561 (1987), this court was presented with the issue of whether an amending petition, which for the first time urged a wrongful death claim and was filed after the prescription date, could relate back to a timely filed medical malpractice action between the same parties and thus save the claim from prescription. The court, quoting Judge Stoker's concurring opinion from Bertrand v. St. Paul Fire & Marine Ins. Co., 491 So.2d 474 (La.App. 3d Cir.), writ denied, 494 So.2d 541 (1986), held that "[t]he fair notice to be found in an original petition need only give a bare bones notice." (Emphasis added). Esteve, 520 So.2d at 850. "If the original pleading is brought against the same parties listed in the amendment, then just about any demand or cause of action may be engrafted on that original pleading." (Emphasis added). Bertrand, *498 491 So.2d at 482. We agree with that reasoning.
In the instant case, the parties are the same in Baker's 1008 form, the claims data form as well as in the amended petition filed in November of 1992. It is true that the original petition requested medical bill payments, and the amended claim is for scheduled loss payments governed by La.R.S. 23:1221(4)(n). However, while there are two statutory duties and two causes of action, clearly there is some bare bones factual connexity between them. In this case, the original 1008 form and the claims data form did not mention a claim for scheduled loss, but the factual events of February 23, 1990, as well as its effect on his eyesight and Baker's diabetic condition were set forth. The essence of interruption of prescription by suit is notice. Gunter, 439 So.2d at 441. Here, Conagra had actual notice that judicial relief was being sought arising from the general factual situation of February 1990, where a co-employee struck Baker in his left eye. The defense certainly knew of Baker's existence. Baker is not a wholly new and unrelated party. Finally, Conagra was not prejudiced in preparing and conducting its defense since the 1008 form and the claims data form put Conagra on notice of a possible loss of eyesight claim. The record reflects that the defense counsel asked Baker questions concerning the loss of sight in his left eye and the affect that loss of visual acuity had on his ability to use that left eye when he took his deposition as well as when they deposed Dr. Lyon before the filing of the amended petition. Thus, the elements as prescribed by the supreme court in Giroir, supra, regarding relation back of amended petitions, have been met.
Applying the liberal rules of construction as to pleadings, we conclude that Conagra had sufficient notice of Baker's claim to interrupt prescription.

INJURY IN COURSE AND SCOPE OF EMPLOYMENT
Conagra contends that the loss of Baker's left eye did not arise from an injury sustained in the course and scope of his employment. We again disagree.
In compensation cases, the claimant has the burden of showing that more probably than not an employment accident occurred and that it had a causal relation to the disability suffered. Delco v. Heritage Manor Nursing Home, 441 So.2d 309 (La. App. 3d Cir.1983), writ denied, 443 So.2d 1123 (1984). A worker's preexisting condition does not bar his or her recovery under the workers' compensation laws because an employer takes the worker as he finds him or her. Guillory v. U.S. Fidelity & Guaranty Ins. Co., 420 So.2d 119 (La.1982); Frederick v. Town of Arnaudville, 572 So.2d 316 (La. App. 3d Cir.1990), writ denied, 575 So.2d 373 (1991). An abnormally susceptible worker is entitled to no less protection under the workers' compensation statute than a healthy worker. It is immaterial that the diseased or weakened condition of the worker might eventually produce the disability suffered outside of the employment situation. Guillory, supra; Toth v. Ensco Environmental Services, 546 So.2d 188 (La.App. 1st Cir.), writ granted, reversed in part on other grounds, 551 So.2d 623, writ denied, 551 So.2d 632 (1989). Said another way, the worker's claim for disability benefits will not be disqualified if the work-related injury aggravates, accelerates, or combines with a disease or infirmity to produce death or disability for which compensation is claimed. Cadiere v. West Gibson Products, Co., Inc., 364 So.2d 998 (La.1978); Delco, supra; Toth, supra.
Whether there is a causal relationship between the disability and the employment is a question of fact. Delco, supra. A factual determination by the hearing officer cannot be reversed unless the hearing officer was clearly wrong from an examination of the record as a whole. Frederick, supra. Obviously, the hearing officer found that the loss of Baker's left eye was a disability causally related to his employment.
The facts indicate that Baker is a diabetic and has been for a number of years and that because of his diabetic condition, he suffered with eye problems. The problems he had with both his right and left eyes resulted in his undergoing laser surgery in 1988 and *499 1990, prior to the incident at work in February of 1990. Conagra relies on the Dr. Lyon's deposition statement that Baker's loss of vision in his left eye and eventual loss of the eye itself was secondary to proliferative diabetic retinopathy and the complications resulting therefrom. However, Dr. Lyon's further testimony reveals that when Baker was hit in the left eye, that incident precipitated hemorrhaging of the eye leading to retinopathy sooner than what might naturally occur due to Baker's diabetic condition. Moreover, Dr. Lyon testified that although Baker had a preexisting proliferative diabetic retinopathy and had undergone partial panretinal laser treatment and was still in the process of that treatment, the accident induced vitreous hemorrhage and, as a consequence of such hemorrhage, he developed retinal detachment. More importantly, Dr. Lyon unquestionably testified that the trauma to Baker's eye while he was undergoing treatment for both eyes to prevent hemorrhaging, would have caused the natural process to accelerate since Baker had a preexisting condition of neovascular blood vessels. In describing the vicious cycle of scarring that occurs once there is hemorrhaging of the eye, Dr. Lyon unequivocally stated that "[t]he trauma did cause the vitreous hemorrhage."
To further support the hearing officer's finding of fact that the loss of Baker's eye is attributable to the on-the-job incident of February 1990, regardless of Baker's diabetic condition, is the testimony of Dr. Wheat. She was the first ophthalmologist to see Baker after the accident and who continued to see him throughout his treatment with Dr. Lyon. Dr. Wheat's testimony concerning the role that the injury at Conagra played in the loss of Baker's left eye noted that, taking into account his past medical history of diabetes, the blood vessels in his eye were more fragile than normal. Because those blood vessels were more fragile, Dr. Wheat continued, the vessels in his left eye became aggravated which caused them to hemorrhage when Baker was hit. Dr. Wheat further expressed her opinion that the prior laser surgery did a good job of controlling Baker's retinopathy. But for the fact that he was struck in the left eye, he would have gone blind a lot later, if that condition occurred at all. She stated unequivocally that the trauma Baker sustained in his left eye definitely accelerated any problems that might have occurred down the road.
To support its position that Baker's eye loss is not one occurring within the course and scope of his employment, Conagra points to a case decided by this court, Hubbard v. Ingram Services, Inc., 284 So.2d 657 (La. App. 3d Cir.1973), where we held that an employee who suffered a detached retina and eventual loss of vision in one eye failed to sustain his burden of proving that an on-the-job injury was the cause of the loss. This case is clearly distinguishable from the present case. In Hubbard, the plaintiff failed to prove that he suffered any trauma to his eye whatsoever. Here, there is no dispute that Baker suffered an on-the-job trauma to his left eye. The question is whether that trauma caused Baker to eventually lose his left eye.
From the testimony of Baker's treating physicians, the incident at Conagra in February of 1990 was the most probable cause of the condition in his eye becoming symptomatic which in turn caused the loss of his left eye and disability. Based on the entire record, we cannot say that the hearing officer was clearly wrong in finding that Baker's injury and his consequent disability were employment related. Therefore, Baker is entitled to scheduled loss payments pursuant to La.R.S. 23:1221(4) for anatomical loss of use or amputation of his left eye.
For the reasons assigned, the judgment of the hearing officer is affirmed at Conagra's cost.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.