712 So.2d 552 (1998)
In re Petition of Mary Alice GAINES and Willie James Gaines to perpetuate evidence, testimony, and to preserve evidence, Plaintiff-Appellee,
v.
Anthony J. BRUSCATO, Intervenor, Defendant-Appellant.
No. 30340-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*554 Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, for Defendant-Appellant Anthony J. Bruscato.
Mcintosh, Fox & Lancaster by John M. Lancaster, for Plaintiffs-Appellees Mary Alice Gaines and Willie James Gaines.
Hamilton & Carroll by Donald K. Carroll, Oak Grove, for Plaintiff-Appellee J.W. Witcher.
Before GASKINS, CARAWAY and PEATROSS, JJ.
GASKINS, Judge.
The intervenor, Anthony J. Bruscato, appeals from a trial court judgment finding that a "supplemental and amended petition" filed in 1996, asserting a personal injury claim arising in 1991, did not relate back to a petition to perpetuate testimony filed in 1992, and therefore the claim had prescribed. For the following reasons, we affirm the trial court judgment.

FACTS
On October 15, 1991, Mary Alice Gaines was employed on a West Carroll Parish potato farm owned by J.W. Witcher. During the potato harvest, Mrs. Gaines was injured when her arm became caught in a potato harvester. As a result of her injuries, her right arm was amputated.
Mr. Gaines contacted Anthony J. Bruscato to prosecute a personal injury or workers' compensation claim against Mr. Witcher. According to Mr. Bruscato, Mr. Gaines incorrectly stated that the accident occurred on October 22, 1991. On February 11, 1992, Mr. Bruscato filed a petition to perpetuate evidence, testimony and to preserve evidence. In the petition, he asserted that Mr. and Mrs. Gaines were the plaintiffs, but no defendants were named. The petition asserted that Mrs. Gaines was employed by J.W. Witcher and was injured working on the potato farm. The petition sought a court order to allow the taking of the deposition of J.W. Witcher, to inspect the harvester and to prevent the machine from being destroyed. An order was filed February 11, 1992, allowing the petitioners to enter the farm of J.W. Witcher in Pioneer, West Carroll Parish, Louisiana, for the purposes of inspecting, measuring, surveying, and photographing the potato harvester owned by J.W. Witcher and the accident site in question. It was ordered that the petitioners be allowed to take the deposition of Mr. Witcher and it was ordered that the potato harvester and its component parts involved in the subject accident be preserved "until it is determined whether the same will be used as evidence in this matter."
Even though an order was entered ex parte by the trial court on the date the petition was submitted, a hearing was held *555 on March 23, 1992. Following the hearing, a judgment was signed, granting the relief prayed for in the petition. Mr. Witcher was deposed and the harvester was inspected.
According to Mr. Bruscato, a petition asserting the plaintiffs' claims arising from the accident was filed on October 22, 1992. Apparently, the petition was filed under a different docket number from the petition to perpetuate evidence and testimony. Mr. Witcher's attorney filed an exception of prescription, claiming that, because the accident occurred on October 15, 1991, the claim had prescribed. Mr. Bruscato then asserted that two associates in his office, Carey B. Underwood and J. Antonio Tramontana, voluntarily dismissed the petition, without prejudice.
In late 1995 or early 1996, Mrs. Gaines obtained a copy of her file from Mr. Bruscato and hired new attorneys, Felix J. Bruyninckx, III and Brian E. Crawford, to advise her. The possibility of a legal malpractice claim against Mr. Bruscato was discussed.
On March 5, 1996, Mr. Bruscato filed a "supplemental and amending petition" on behalf of the Gaines, apparently without their consent, naming as defendants J.W. Witcher and Gary Foster, d/b/a Foster and Easley Manufacturing, the manufacturers of the potato harvester. The petition alleged that Mrs. Gaines was injured when her arm became entangled in the machine, sought damages for her injuries and asserted a loss of consortium claim on behalf of Mr. Gaines. This petition was filed under the same docket number as the petition to perpetuate testimony and to preserve evidence.
On March 15, 1996, a motion and order were entered in the case formally dismissing Mr. Bruscato as the Gaines' attorney. John M. Lancaster was later substituted in this matter to represent the Gaines so that Mr. Crawford and Mr. Bruyninckx could represent the Gaines in the legal malpractice claim without having a conflict of interest. The Gaines filed a legal malpractice claim against Mr. Bruscato, Mr. Underwood, Mr. Tramontana and their various legal partnerships on April 1, 1996 in Ouachita Parish. In the present case, on March 19, 1996, Mr. Bruscato filed a petition for intervention claiming that he had an interest in the outcome of the case because of the legal malpractice claim.
On April 3, 1996, J.W. Witcher filed several exceptions to the supplemental and amending petition. He first asserted that the matter had prescribed. He also argued that the judgment on the petition to perpetuate was a final judgment and is a res judicata bar to the supplemental and amending petition. He also filed an exception to the intervention by Mr. Bruscato, arguing that there is no viable action in which he can intervene and therefore he has failed to show or properly assert a cause of action.
On May 22, 1997, the trial court entered a judgment granting the exception of prescription and dismissing with prejudice the supplemental and amending petition of March 5, 1996. The intervention by Mr. Bruscato was also dismissed. In written reasons for judgment, the court stated that the issues for decision were whether the original petition to perpetuate testimony and preserve evidence interrupted the running of prescription and whether the supplemental and amending petition filed in March 1996, relates back to the filing of the discovery petition.
The court found that the petition to preserve testimony and evidence did not present a demand for enforcement of a legal right sufficient to interrupt prescription. The court noted that there were no defendants named in that petition. The court also found that the supplemental and amending petition did not relate back to the filing of the petition for the perpetuation of testimony and preservation of evidence. Therefore, the claim for damages was prescribed.
The court noted that Mr. Bruscato had a cause of action and his intervention was proper, but at this point, there was no action upon which to intervene. Mr. Bruscato appealed the trial court judgment. Mr. and Mrs. Gaines did not appeal.

PRESCRIPTION
Mr. Bruscato argues on appeal that the issue is whether the supplemental and amending petition related back to the filing of the petition to perpetuate testimony and evidence which was filed within the prescriptive *556 period. He contends that the trial court erred in perceiving the threshold issue to be whether the petition to perpetuate had the effect of interrupting prescription on the Gaines' claims. He also contends that the trial court erred in failing to follow the reasoning of Bertrand v. St. Paul Fire and Marine Insurance Company, 491 So.2d 474 (La.App. 3d Cir.1986), writs denied 494 So.2d 541, 543 (La.1986). For the following reasons, we find that the supplemental and amending petition did not relate back to the filing of the petition for perpetuation of testimony and evidence, and therefore, the claim for damages has prescribed.

Petition to Perpetuate Testimony and Preserve Evidence
Mr. Bruscato's first action in this matter was the filing of a petition for the perpetuation of testimony and evidence. Therefore, our analysis of this case will begin with an examination of that document. The petition was filed pursuant to La. C.C.P. art. 1429 which provides:
A person who desires to perpetuate his own testimony or that of another person regarding any matter that may be cognizable in any court of this state may file a verified petition in a court in which the anticipated action might be brought. The petition shall be entitled in the name of the petitioner and shall show:
(1) That the petitioner expects to be a party to an action cognizable in a court of this state but is presently unable to bring it or cause it to be brought.

(2) The subject matter of the expected action and his interest therein.
(3) The facts which he desires to establish by the proposed testimony and his reasons for desiring to perpetuate it.
(4) The names or a description of the persons he expects will be adverse parties and their addresses so far as known.

(5) The names and addresses of the persons to be examined and the substance of the testimony which he expects to elicit from each, and shall ask for an order authorizing the petitioner to take the depositions of the persons to be examined named in the petition, for the purpose of perpetuating their testimony. [Emphasis supplied.]
In paragraph five of the petition, Mr. Bruscato stated:
Petitioners expect to be parties to an action as a result of the injuries sustained by Mary Alice Gaines. Petitioners seek information concerning how the accident occurred, the condition and operation of the potato harvester at the time of the accident, and a full explanation to determine precisely the events and mechanisms producing the accident in question. Petitioners are not aware of the names and addresses of any adverse parties at present, and will not know same without authority to perpetuate testimony herein and to inspect and examine the machine and site in question.
A petition for pre-litigation preservation of testimony under La. C.C.P. art. 1429 is an extraordinary discovery method to be used where resort to normal discovery is made impossible by the absence of pending litigation. Marine Shale Processors Inc. v. State, Through Department of Health and Hospitals, 572 So.2d 280 (La.App. 1st Cir. 1990). The perpetuation of testimony under this rule is not a substitute for discovery, but is made available in special circumstances to preserve testimony that would otherwise be lost. Marine Shale Processors Inc. v. State, Through Department of Health and Hospitals, supra. This unusual device is not to be used in a fishing expedition to determine whether to file suit. In the Matter of Vermilion Parish School Board, 357 So.2d 1295 (La.App. 3d Cir.1978); Petition of Miranne, 626 So.2d 744 (La.App. 5th Cir. 1993).[1]
The petition to perpetuate filed in this case is deficient in that no adverse parties *557 were named in the petition, as required by the statute, even though Mr. Bruscato knew that Mr. Witcher was the owner of the harvester machine and that he was Mrs. Gaines' employer at the time the accident occurred. Mr. Bruscato also knew that Gary Foster d/b/a Foster and Easley Manufacturing was the manufacturer of the harvesting machine.
We find that the petition to perpetuate filed in this case did not interrupt the running of prescription by itself. The statutory scheme for pre-litigation petitions to perpetuate testimony clearly envisions the use of this procedure in the absence of litigation. This is in contrast to the statutory scheme for instituting a claim and for interrupting prescription. Delictual actions are subject to liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. Prescription is interrupted when the obligee commences action against the obligor in a court of competent jurisdiction and venue. La. C.C. art. 3462. A civil action is a demand for enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction. La. C.C.P. art. 421. A petition shall set forth the name, surname and domicile of the parties; shall contain a short, clear and concise statement of all causes of action arising out of, and of the material facts of the transaction or occurrence that is the subject matter of the litigation. La. C.C.P. art. 891. These provisions provide that prescription is interrupted when a civil action is commenced, parties are named and the alleged tortfeasor is notified of the claim against him. The petition in the present case did not name adverse parties and requested only the taking of a deposition and the inspection and preservation of the harvester for use in future litigation. No demand for enforcement of a legal right was made in the petition for perpetuation of testimony and evidence. While this pre-litigation petition did not interrupt prescription, our next inquiry is whether the supplemental and amending petition related back so as to cure these notice inadequacies.

Relation Back
Amended and supplemental pleadings are governed by La. C.C.P. art. 1151-1156. La. C.C.P. art. 1151 relative to amended pleadings provides in pertinent part:
A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. He may be ordered to amend his petition under Articles 932 through 934. A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party.
A defendant shall plead in response to an amended petition within the time remaining for pleading to the original pleading or within ten days after service of the amended petition, whichever period is longer, unless the time is extended under Article 1001.
La. C.C.P. art. 1153 provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
La. C.C.P. art. 1155 on supplemental pleadings states:
The court, on motion of a party, upon reasonable notice and upon such terms as are just, may permit mover to file a supplemental petition or answer setting forth items of damage, causes of action or defenses which have become exigible since the date of filing the original petition or answer, and which are related to or connected with the causes of action or defenses asserted therein. [Emphasis supplied.]
A supplemental pleading differs from an amended pleading in that an amended pleading involves matters which occurred before the original complaint was filed and which were either overlooked by the pleader or were unknown to him at the time, while a supplemental pleading covers issues or causes of action which have arisen since the *558 filing of the original petition, which relate to the issues or actions contained in the original petition. Adema v. Elliott, 223 So.2d 464 (La.App. 4th Cir.1969). New defendants and new plaintiffs may be added by supplemental and amended pleadings if the applicable criteria are met. See Giroir v. South Louisiana Medical Center, Division of Hospitals, 475 So.2d 1040 (La.1985); Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983). In some instances, even new causes of action may be asserted in supplemental and amended pleadings. See Scott v. Haley, 632 So.2d 793 (La.App. 1st Cir.1993); Adema v. Elliott, supra; Turnage v. Century Telephone Enterprises, Inc., 604 So.2d 207 (La.App. 2d Cir.1992).
The doctrine of relation back of amending pleadings should be liberally applied, particularly in the absence of prejudice. Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267 (La.1981); Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060 (La.App. 1st Cir.1990), writ denied 567 So.2d 109 (La.1990). A liberal interpretation of La. C.C.P. art. 1153 is also encouraged by two familiar rules of construction. First, La. C.C.P. art. 5051 states that articles of the Code of Civil Procedure are to be construed liberally. Esteve v. Iberia Parish Hospital, 520 So.2d 848 (La.App. 3d Cir.1987), writ denied 522 So.2d 561 (La. 1987). The second rule is that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished by it. Esteve v. Iberia Parish Hospital, supra; Baker v. Conagra Broiler Company, 93-1230 (La.App. 3d Cir. 5/4/94), 640 So.2d 494, writ denied 94-1435 (La.9/23/94), 642 So.2d 1289.
It is well established that La. C.C.P art. 1153 permits amendment despite technical prescriptive bars where the original pleading gives fair notice of the general fact situation out of which the amended claim arises. Gunter v. Plauche, 439 So.2d 437 (La.1983); Scott v. Haley, supra; Esteve v. Iberia Parish Hospital, supra; Baker v. Conagra Broiler Company, supra.
The purpose of prescription statutes is to afford a defendant economic and psychological security if a cause of action is not pleaded timely and to protect the defendant from stale claims and loss of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the prescriptive period. Findley v. City of Baton Rouge, 570 So.2d 1168 (La.1990); Baker v. Conagra Broiler Company, supra; Masson v. Champion Insurance Company, 591 So.2d 399 (La. App. 4th Cir.1991).
If the original timely pleading gave actual notice to a party that a formal claim is being made on a particular factual situation, no essential purpose of a prescriptive statute is violated by permitting relation back of a post-prescription amendment based upon the same factual situation. Through the original pleading, the opponent knows that judicial relief is sought from the general factual situation alleged and he is put on notice that his evidence concerning the factual situation should be collected and preserved. Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La. 1973); Burrier v. Malmac Energy Corporation, 592 So.2d 1370 (La.App. 2d Cir.1992); Turnage v. Century Telephone Enterprises, Inc., supra; Taylor v. Johnson, 617 So.2d 1209 (La.App. 3d Cir.1993).
As stated above, the purpose of prescription statutes is to protect a defendant against lack of notification of a formal claim within the prescriptive period. If the defendant has actual notice of a formal claim against him, then no purpose of the prescriptive statutes is violated in allowing a supplemental and amending petition to relate back to an earlier pleading arising from the same facts. In this case, Mr. Witcher did not receive actual notification of a formal claim against him for damages within the prescriptive period. The petition to perpetuate was a pre-litigation device used to preserve testimony and evidence. It did not name Mr. Witcher or any other entity as an adverse party or provide notice that a formal claim was being asserted. When a claim for damages was initially asserted, it was dismissed on an exception of prescription. These facts undoubtedly led Mr. Witcher to believe that *559 this matter was concluded. To now allow the relation back of an amended petition, filed four years after the dismissal of the same claim on an exception of prescription, would be prejudicial to Mr. Witcher and would be a violation of the purpose of the prescription statutes.
Further, an amending petition cannot relate back if there is no existing demand. Hayes v. Muller, 248 La. 934, 183 So.2d 310 (1966); Riddle v. Simmons, 626 So.2d 811 (La.App. 2d Cir.1993), writ denied 93-2920 (La.4/29/94), 637 So.2d 459; Three Rivers Farm Supply v. Webber, 617 So.2d 1220 (La.App. 3d Cir.1993). In Hayes v. Muller, supra, parties sought to file a supplemental and amending petition in a suit previously dismissed on an exception of no cause of action. The court found that the plaintiffs were attempting by the improper use of alternative pleadings to assert another cause of action in a previous suit between the same parties that had already been disposed of by final judgment. The court reasoned that La. C.C.P. art. 1151 presupposes that, when an amendment to a petition is filed, there is an original petition or a main demand in esse at the time the amendment is made. Where the suit has been dismissed and the judgment had become final, the main demand was no longer extant.
In Riddle v. Simmons, supra, an intervention was filed alleging a breach of contract which occurred thirteen or fourteen years earlier. The intervention was met with a plea of prescription and it was dismissed. The intervenor sought to amend the intervention at the same time he sought to appeal the dismissal. This court found that logically, a party cannot amend a dismissed petition. La. C.C.P. art. 1151 provided only for the amendment of an existing petition.
In Three Rivers Farm Supply v. Webber, supra, the plaintiff filed an amended petition to add two defendants after the original petition had resulted in judgment. The court found that the legislature, in enacting La. C.C.P. art. 1153, did not intend for the article to be applied after an original petition resulted in final judgment.
Mr. Bruscato argues that, because the judgment on the petition to perpetuate testimony did not dispose of the damage claim, it is not a final judgment. We do not find that the petition to perpetuate in any way disposed of the merits of the personal injury claim in this matter or that it would have been a res judicata bar to a timely assertion of a cause of action for damages. However, in the present case, the only document filed within the prescriptive period was the petition to perpetuate evidence and testimony. All relief requested in that petition was granted in the trial court's judgment. A judgment in a petition to perpetuate testimony under La. C.C.P. art. 1429 is an appealable final judgment. In the Matter of Vermilion Parish School Board, supra. Therefore, the judgment on the petition to perpetuate testimony and evidence in this case was a final judgment and there was no pending demand for the supplemental and amending petition to relate back to when it was filed.
Mr. Bruscato argues that the trial court's order on the petition to perpetuate, issued the same date that document was filed, is still outstanding. However, we reject that argument, finding instead that the court's order was in the nature of a temporary restraining order that was effective until the trial court's hearing on the petition and the granting of a final judgment on that petition.
Because Mr. Witcher was not given actual notice of a formal claim against him in this matter within the prescriptive period and because there was no pleading outstanding for the supplemental and amending petition to relate back to, we find that the trial court was correct in concluding that the claim for damages was barred by prescription.

APPLICATION OF BERTRAND

Mr. Bruscato argues that the trial court erred in failing to apply in this case the reasoning of Bertrand v. St. Paul Fire and Marine Insurance Company, supra, which he contends is controlling here. In Bertrand, the decedent went to a hospital complaining of abdominal discomfort and was initially denied admission. The next day he was admitted to the hospital, but died that afternoon from a ruptured appendix. One *560 month later, his wife and children filed a petition for an injunction against the hospital, a doctor, and the insurance company, to prohibit them from altering or destroying evidence relating to the death. A temporary restraining order was signed the day the pleading was filed, but no hearing was ever held. Fifteen months after the death, the plaintiffs amended the injunction, alleging medical malpractice and seeking damages from the three defendants. A second amending petition was later filed, adding another doctor not named in the injunction. Exceptions of prescription were filed on both amending petitions. As to the first amending petition, the appellate court found that it related back to the filing of the petition for injunction. Therefore, the medical malpractice claim was not barred by prescription.
The court found that an amending petition should relate back to a prior pleading, even if it stated a new cause of action, because the defendants had notice of the basic facts of the claim and were put on notice that some form of judicial relief was being sought arising from their participation in the events leading to the decedent's death. The injunction pleading gave the defendants notice that liability arising out of the factual occurrence pleaded was sought to be enforced against them. Under these facts, the court found that the defendants were not prejudiced by the later assertion of the medical malpractice claim. However, the amendment seeking to add a new doctor not named in the injunction was held to be prescribed because he did not have notice within the prescriptive period that a claim was being asserted against him. In the present case, Mr. Witcher's position is similar to that of the new doctor in the Bertrand case. As in Bertrand, Mr. Witcher was not given notice within the prescriptive period that a claim was being asserted against him. Therefore, as in Bertrand, the claim asserted against him in the amending petition was prescribed.
Those reasons in Bertrand which led the trial judge to allow the petition for damages to relate back to the injunction are absent in this case. In Bertrand, the injunction named the defendants against whom relief was sought. In the present case, Mr. Bruscato specifically declined to name Mr. Witcher or any other entity as adverse parties. Therefore, as stated above, Mr. Witcher was not on notice that the plaintiffs sought to hold him liable for the factual occurrences set forth in the original pleading. Also, in Bertrand, the temporary restraining order was still pending and no hearing had been held when the amended petition was filed. Here, the pre-litigation petition to perpetuate testimony and evidence was not still pending at the time the amended pleading was filed. For these reasons, we find, as did the trial court, that the Bertrand case is not dispositive of the issues in the case sub judice.

CONCLUSION
For the reasons stated above, we find that the supplemental and amending petition filed in this case by the intervenor, Anthony J. Bruscato, did not relate back to the filing of a petition for perpetuation of testimony and evidence and therefore the claim for damages in the amended petition was barred by prescription. Accordingly, the trial court judgment is affirmed. All costs in this court and in the court below are assessed to the intervenor, Anthony J. Bruscato.
AFFIRMED.
NOTES
[1] An example of the proper use of this extraordinary device is found in Lasseigne v. Perpetuate Testimony, 381 So.2d 952 (La.App. 3d Cir.1980). In that case, the plaintiff sought to perpetuate the testimony of his mother, claiming that she disposed of immovable property in violation of his legitime. However, the claim regarding impingement on the legitime could not be brought until after the mother's death.